**Joan Rey (Todd) GRAY,**
**Plaintiff/Appellant,**

v.

**Max Delter TODD, Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section at Nashville.

July 12, 1991.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 23, 1991.

Raymond W. Fraley, Jr., Fayetteville, for plaintiff/appellant.

Knox Bigham, Bigham and Boyd, Lewisburg, for defendant/appellee.

TOMLIN, Presiding Judge (Western Section).

Joan Rey (Todd) Gray ("plaintiff") filed suit in the Chancery Court of Marshall County against her former husband, Max Delter Todd, ("defendant"). She sought court-ordered sale of certain farm property held by them as tenants in common and certain farm equipment jointly owned by them at the time of their divorce. Defendant counter-claimed, asserting that as a result of discussions had by the parties at the time the divorce was obtained, an express oral trust in favor of defendant had been created by the parties in both the realty and farm equipment. Such negotiations were denied by plaintiff. Following a bench trial the chancellor found that there was a latent ambiguity in the property settlement agreement ("PSA") entered into by and between the parties in connection with their irreconcilable differences divorce. The court held that defendant had established by parol evidence the existence of an express oral trust, as contended. Plaintiff's original suit was dismissed. Plaintiff presents a singular issue on appeal: Whether the evidence preponderates against the finding of the chancellor that an express oral trust in the property in favor of defendant existed. For the reasons hereafter stated, we affirm in part, reverse in part, and remand.

The parties had been married for approximately twenty years when they divorced. While it appears that at the time of the divorce plaintiff may have been romantically involved with the man to whom she is now married, plaintiff was awarded an irreconcilable differences divorce from defendant. In connection therewith, the parties executed a property settlement agreement which provided for custody and support of the parties' three minor children, the division of the parties' respective rights and interests in all joint and individual property, and the apportionment of the responsibility for the payment of the parties' joint and individual debts. The PSA was incorporated in its entirety in the final decree of divorce.

We will consider only those portions of the PSA that are pertinent and relevant to this litigation. The first provision in this category deals with all the real estate owned by the parties—in excess of 400 acres of farmland—which was distributed as follows:

3. Wife and Husband agree that the absolute fee title of the real estate be divested out of the Wife and Husband as tenants by the entirety and vested into the Wife and Husband as tenants in common, each owning a one-half (½) undivided interest as tenants in common of the real estate lying and situated in the First Civil District of Marshall County, Tennessee, being bounded and described as follows, to-wit: (here follow several legal descriptions).

The PSA further provided that Husband was to pay all of the indebtedness owing on the property so described, along with certain other debts of the parties represented by promissory notes. The debts totaled in excess of $125,000.

The parties also owned well over a hundred head of cattle as part of their farming operation. Pursuant to the PSA, plaintiff agreed to sell her half interest in the cattle to defendant. The transaction was described in the PSA as follows:

9. Husband shall, for the consideration of the sum of $90,000.00 payable to the Wife as evidenced by a promissory note dated the 13th day of August, 1983, and secured by a lien in the amount of $90,000.00 to be filed against his one-half undivided interest on all of the real estate upon the entering of the Final Decree for Divorce in the Register's Office of Marshall County, Tennessee, receive all of the cattle, heifers, bulls and beef cows. . . .

As to the farm equipment and machinery, the PSA stated that "Husband and Wife agree to divide all farm equipment and machinery equally and in the event a sale becomes necessary, Husband and Wife agree to divide the proceeds equally after all expenses of said sale are paid." The PSA also provided that for a period of 120 days after the divorce decree became final,

Husband was not to sell any livestock, farm machinery or equipment, but in the event he did so during that time, Wife was entitled to one-half of the net proceeds of any sale.

The promissory note given plaintiff by defendant pursuant to the provisions of paragraph 9 of the PSA was in the amount of $90,000, dated August 13, 1983, and payable "On or before twenty (20) years after date...." The note contained language that tracked the provisions of paragraph 9 of the PSA as follows:

> This note is secured by a lien filed upon the real estate of the parties, held by them as tenants in common and for purposes of securing this note signed by Max Delter Todd, with said real estate being in the 1st Civil District of Marshall County, Tenn., and which is more particularly described in the Property Settlement Agreement bearing the date of August 13, 1983, to which reference is here made, and filed and entered in the Chancery Court of Marshall County, Tenn., with said Final Decree filed and entered on the 15 day of Nov., 1983, and recorded in the Register's Office of Marshall County, Tennessee, in Deed Book 98, page 75.

The period that followed the parties' divorce up until the filing of the complaint initiating this litigation was marked by further domestic discourse concerning child visitation, payment of child support, and who got whom as a tax deduction. In June, 1986, plaintiff brought this action against defendant. Her complaint alleged that the real estate owned by the parties at the time of the divorce was now vested in them as tenants in common; that defendant received all the livestock of the parties in consideration for the execution by him to her of a promissory note in the amount of $90,000 secured by a lien on defendant's one-half interest in the real estate; that all the farm machinery and equipment of the parties was to have been divided equally, but that the parties had not carried out that provision of the decree. Plaintiff asked the court to order a sale of the real estate, farm equipment and machinery and to cause the defendant's $90,000 note to be paid from the proceeds of the sale.

Defendant filed a counter-claim in which he alleged that plaintiff's one-half interest in the realty, equipment and machinery was subject to an express oral trust in his favor. The alleged oral trust allowed him the right to use said realty, machinery and equipment for a period of twenty years from the date of the decree. Plaintiff denied these allegations in her answer to the counter-claim. Plaintiff subsequently amended her complaint alleging her entitlement to one-half of the rental income of the former residence located on the property, as well as one-half of the income from any business conducted on the property. Defendant denied her right to this income.

The chancellor filed a lengthy and thorough, albeit erroneous, memorandum opinion which clearly reflects that the court was more concerned with trying defendant's counter-claim than considering the partition sought by plaintiff.

There were only three witnesses who testified below—plaintiff, defendant, and Hon. Roger Brandon, one of plaintiff's former attorneys. The chancellor's memorandum opinion reads in part as follows:

> The determinative issue is whether the parties had entered into an agreement that Mr. Todd would have the right to use the farm and equipment for twenty years.
>
> ... The Court finds that Mr. Todd's position is supported by clear cogent and convincing evidence. The most significant fact is the note itself which expressly bears no interest, matures not sooner than 20 years, requires no periodic payments, has no acceleration clause, and by its' [sic (its)] terms is secured, not by a deed of trust, but by a lien in the amount of $90,000.00 to be filed against his one-half undivided interest in all of the real estate....
>
> ....
>
> The property settlement agreement and the $90,000.00 note form part of the same transaction and are required to be interpreted as one instrument. Without Mr. Todd's testimony as to the oral

agreement between the parties, the instrument as drafted is latently ambiguous because it establishes a lien on the land for twenty years but does not otherwise express the duration of the tenancy in common. The agreement was drafted by Mrs. Todd's attorney at her direction. Any ambiguity should be construed against Mrs. Todd.

The fact that Mrs. Todd retained a lien on Mr. Todd's one-half interest in the real estate for twenty years indicates to the Court that she expected him to hold the property as collateral for her for that period of time....

The Court is of the opinion and so finds that it was the intention of the parties at the time of their agreement that in consideration of Mr. Todd assuming the joint debts of the parties plus the giving of his note in the amount of $90,-000.00 for the cows, he was to have the use of the farm and equipment for 20 years in order to pay off the said debts.

The testimony of plaintiff and defendant is diametrically opposite on the subject of defendant's use of the real estate, farm equipment and machinery.

Defendant testified that three or four days before he signed the PSA he talked with plaintiff concerning his right to use the farm for twenty years. He stated on that occasion plaintiff advised defendant that her lawyer had drawn up the property settlement agreement and that she went down to the barn to see defendant and there made him the following deal: If he would go to the lawyer's office and sign the papers, he would be allowed to use the farm for twenty years; he could owe her for the cattle for twenty years; and he would be expected to pay off everything the parties owed together. At one point defendant stated "I read the thing. But half the time I don't know what I'm reading in those things in that lawyer talk...." Defendant testified further that he never received a copy of the PSA beforehand. Plaintiff, on the other hand, testified that she delivered to him a copy of the proposed agreement for his signature and that he had it approximately two weeks before

signing and returning it to her or her lawyer. It seems apparent to this Court that defendant was aware that the "agreement" about the use of the property for twenty years was not in the PSA because defendant testified "I guess that I just didn't really realize that it needed to be in there about the 20 years." Defendant conceded that he never wrote plaintiff a letter documenting the agreement, and that no one witnessed or overheard their conversation concerning the 20–year trust.

After the agreement was prepared and signed, defendant never approached plaintiff about inserting any provisions in the agreement concerning his right to use the property for twenty years. Defendant testified that before this lawsuit he did not know what a "tenant in common" was. Plaintiff, on the other hand, testified that she knew what a "tenant in common" was and that she did not seek to educate defendant in that regard. Defendant also stated that his father advised him to see a lawyer, and that he and his father discussed the matter for three or four days between the time plaintiff and defendant talked at the farm and defendant finally signed the agreement.

Plaintiff testified that at no time while defendant had the documents prior to signing them did he advise her that he recalled the parties had fashioned an oral agreement that varied from the terms represented in the PSA, and it was the oral agreement that gave him use of the farm for twenty years. Plaintiff further stated that in 1985, after the divorce had become final and before this suit was filed, she had a discussion with defendant about getting the property sold and dividing the proceeds. Plaintiff testified that defendant advised her that if she would wait until the Charlie Jones note was paid off in October, 1986, he would talk to her about buying her half of the farm.

Roger Brandon, plaintiff's attorney at the time of the divorce, testified that neither plaintiff nor defendant ever advised him there was any agreement between them not expressed in the PSA. Brandon stated that defendant went to his office

and signed the PSA about a week or two after Brandon had drafted the PSA and had given a copy of it to plaintiff.

The chancellor reached several erroneous conclusions, as set forth in his memorandum opinion. The court observed that the note "matures not sooner than 20 years ... has no acceleration clause." Under the expressed terms of the note, this is not a note for an express term of twenty years. It provides for full payment "on or before twenty (20) years" and does not contain an acceleration clause. However, based upon the provisions of the UCC, although this note contains no acceleration clause nor any right to demand prepayment, it is not a note for a twenty-year term. The provision "on or before" gives the maker—the defendant—the right to pay this note off at any time before the year 2003. While the flip side of it is that plaintiff cannot call the note during the twenty-year period unless there is some type of default, defendant may "accelerate" his payment. He is not bound to be obligated on the note for the full twenty-year term.

■ It cannot be rightfully said that the PSA "establishes a lien on the land for twenty years." The plaintiff's lien on defendant's interest in the land is for an indefinite period of time up to but not exceeding twenty years.

■ Although only tangentially relevant, we are of the opinion that there is no "latent ambiguity" in the PSA that would be charged against plaintiff. The court found such to exist because of the twenty-year lien and also because of the absence of a statement of duration of the tenancy in common of the parties. A tenancy in common is without duration. It lasts in perpetuity until the co-tenants subsequently terminate the tenancy in common by either partition or sale.

■ The fact that plaintiff did not retain a lien on defendant's one-half interest in the real estate for a term of twenty years does not support the court's finding that plaintiff "expected him [defendant] to hold the property as collateral for her for that period of time." As we have already noted, defendant has the privilege of paying that note at any time prior to the year 2003 without permission and without penalty.

■ Of greater importance, however, is our conclusion that the chancellor erroneously found that there was an expressed oral trust created by "clear cogent and convincing evidence." We acknowledge our standard of review in this case, coming to this Court from a bench trial. That review is *de novo* upon the record, with a presumption of correctness attaching to all findings of the trial court. Absent an error of law, unless the evidence preponderates against these findings, we must affirm. Rule 13(d) T.R.A.P.

Several general principles applicable to the creation of an express oral trust have been set forth in 76 Am.Jur.2d, *Trusts*. We quote:

**§ 637. Degree of intensity of parol proof of trust.**

The general rule is that oral proof of an express trust in realty or personalty which is not required to be in writing, or of facts giving rise to a resulting or constructive trust, must be received with caution. So reluctant are the courts to engraft a trust by parol on the legal title to real estate, or to enforce an alleged parol trust in personal property, that there is perhaps no better-established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence. This rule requiring an extraordinary degree of certainty of proof in this class of cases has been applied or recognized in practically all jurisdictions, but with a wide variety of statements regarding the kind of testimony essential to establish the trust.

76 Am.Jur.2d *Trusts* § 637, at 846–47 (1975).

In setting forth the specific terms in which the required degree of proof should be stated, the application of this rule is found in § 638, which reads in part as follows:

It is clear that something more than a mere preponderance of the evidence is required to overcome the presumptions in favor of the holder of the legal title or the person having apparent ownership thereof, and to establish a trust by parol.

*Id.* § 638, at 848. The same section in addressing the quantum of proof states:

It has also been held, where an express trust in land can be proved by parol evidence, that testimony of one witness only, unsupported by any corroborating circumstances, is insufficient to prove such a trust. It has similarly been held that a resulting trust cannot be declared on the unsupported testimony of a plaintiff, contradicted by the testimony of the defendant and others, where the circumstances supporting each side are about equally divided.

*Id.* at 849–50.

■ In this state, a trust in real estate may be proven by parol evidence. *Alexander v. C.C. Powell Realty Co., Inc.,* 535 S.W.2d 154 (Tenn.App.1975). In *Linder v. Little,* 490 S.W.2d 717 (Tenn.App.1972), the Middle Section of this Court stated:

And, proof of a parol trust must be of the clearest and most convincing character. It must be so clear, cogent and convincing as to overcome the opposing evidence coupled with the presumption that obtains in favor of the written instrument. *Hoffner v. Hoffner,* 32 Tenn. App. 98, 221 S.W.2d 907 (1949) and authorities cited therein.

*Id.* at 723.

In the more recent case of *King v. Warren,* 680 S.W.2d 459, 461 (Tenn.1984), our Supreme Court observed:

We recently had occasion to discuss the law with respect to the establishment of an oral trust in real estate, affirming the requisites that the declaration must be made prior to or contemporaneous with a transfer of realty, must be proven by evidence that is clear, cogent and convincing, and that ordinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by that quantum of proof. *Tansil v. Tansil,* 673 S.W.2d 131 (Tenn.1984); citing *e.g. Sanderson v. Milligan,* 585 S.W.2d 573 (Tenn.1979) and *Hunt v. Hunt,* 169 Tenn. 1, 80 S.W.2d 666 (1935).

*Id.* at 461.

In examining the record before us in light of these authorities we observe that the only evidence of the purported oral agreement to create a trust was the testimony of an interested party—the defendant. In many respects his testimony was inconsistent. For instance, he initially testified that he read the PSA before signing it; later, he testified that he just "skimmed through it." Another time he indicated that the alleged agreement was reached during the first meeting between him and plaintiff down at the farm; later he implied that the agreement was reached at a subsequent meeting when plaintiff sought to get him to sign the divorce papers.

Furthermore, defendant's testimony concerning the alleged agreement was contradicted by the testimony of plaintiff. Much of her testimony concerning the applicable time frames was corroborated by her former attorney. There was no single corroborative witness to the testimony of defendant. In light of the authorities cited herein, we find that defendant's evidence failed by a long shot to rise to the standard of "clear, cogent and convincing proof" required by law for the creation and imposition of an orally-expressed trust.

■ Turning briefly to plaintiff's suit for partition, we note that while plaintiff qualifies generally as a person entitled to seek partition pursuant to T.C.A. § 29–27–101, in asking for a sale for division she has neither made the appropriate allegations nor offered the requisite proof required by T.C.A. §§ 29–27–201, *et. seq.* Accordingly, we are compelled to affirm the decree of the chancellor dismissing her complaint. For the reasons hereinabove stated, the decree of the chancellor sustaining defendant's counter-claim is reversed. Costs in this cause are taxed one-half to plaintiff and one-half to defendant, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.