IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 19, 2020 Session

## JUSTIN JOSEPH HARRIS v. WENDELL SMITH, ET AL.

**Appeal from the Chancery Court for Rhea County**
**No. 16-CV-11033     Frank V. Williams, III, Chancellor**

———————————————————

### No. E2019-00906-COA-R3-CV

———————————————————

This is a constructive trust case. The plaintiff, who had recently purchased a twelve-acre tract of real property, filed a complaint for ejectment against the defendants, his uncle and cousin by marriage, who were residing in and claiming ownership of a block house and a two-acre parcel of the twelve-acre tract. The defendants, however, requested—and the trial court ultimately imposed—a constructive trust in favor of defendant uncle against the two-acre parcel and the block house. Finding that the plaintiff purchased the entire twelve acres with notice that the defendant uncle had a beneficial interest in the two-acre parcel and block house, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined

Rebecca L. Hicks, Dayton, Tennessee, for the appellant, Justin Joseph Harris.

Howard L. UpChurch, Pikeville, Tennessee, for the appellees, Wendell Smith, and Jason Smith.

### MEMORANDUM OPINION[1]

———————————————

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by a memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

## BACKGROUND AND PROCEDURAL HISTORY

At the time of the underlying trial, Emma Price was eighty-nine years old and had four children: Wendell Smith; Wilma Smith Foy, who passed away on August 28, 2018; Ernie Price; and Brenda Harris. As the relevant parties here on appeal, Wendell Smith is from Emma Price's first marriage, and Brenda Harris is from Emma Price's second marriage to Jesse Price. Wendell Smith has a son, Jason Smith. Brenda Harris also has a son, Justin Harris. In 1997, Emma Price and Jesse Price divorced. As part of the division of marital property, Emma Price was awarded a twelve-acre parcel of real property located at 169 Harris Price Lane ("the Property"), which included the family home and a barn. In 1999, following his mother's divorce, Wendell Smith moved into the barn on the Property, where he lived intermittently for the next several years. In 2011, the barn burned down. Sometime shortly after the barn burned, Wendell Smith began building a block house on a two-acre parcel of the Property behind the family home.

Beginning in 2012, Emma Price's mental and physical health began to decline. As a result, on January 15, 2013, she executed a Durable Power of Attorney, naming Brenda Harris as her attorney-in-fact. Among her siblings, Brenda Harris assumed the majority of the caretaking responsibilities for her mother, using the money in her mother's bank account to pay for her expenses. By July 2015, however, Emma Price's bank account had been depleted. With no money left to take care of their mother, Brenda Harris informed Wendell Smith and the other siblings that the Property would have to be sold in order to provide for their mother's care. According to Wendell and Jason Smith, Brenda Harris acknowledged that the two-acre parcel upon which Wendell Smith had built the block house was to be excluded from the sale of the Property, which was in keeping with Emma Price's last will and testament. While the will is not in the record on appeal, it is undisputed it provided that, upon her death, two acres of the Property would pass to Wendell Smith.

Initially, Brenda Harris was attempting to keep the Property in the family and sell it to a family member. Several family members, including Cassandra Thornsbury, a granddaughter of Emma Price, and Tara Smith, Wendell Smith's daughter, were interested in purchasing the Property but, for various reasons, were unable to do so. In December 2015, Justin Harris decided he would like to purchase the Property. However, after Jason and Tara Smith filed a Petition for Conservatorship[2] in January 2016, requesting that they be appointed as co-conservators of the person and estate of Emma Price, Brenda Harris ultimately decided not to sell the Property to a family member.

On February 3, 2016, she listed the Property with Jim Monday at ERA Blue Key Properties. This initial listing included only ten of the twelve acres and the family home.

---

Tenn. R. App. P. 10
[2] The Petition for Conservatorship is not at issue on appeal.

However, according to Brenda Harris and Jim Monday, potential buyers did not want the Property unless it came with the full twelve acres. It was at this point that Justin Harris decided, for the second time, that he would purchase the Property so his grandmother would not have to move into a nursing home. While Justin Harris maintains that he always intended to purchase the entire twelve acres of the Property, Wendell and Jason Smith argue that Brenda Harris was willing to sell only ten acres of the Property, thus excluding the two-acre parcel and the block house located upon it. Justin Harris made his second offer to purchase the entire twelve-acre tract for $190,000 on May 11, 2016, which Brenda Harris accepted on behalf of Emma Price. Because Wendell and Jason Smith still occupied the two-acre parcel following the close of the sale on June 10, 2016, Justin Harris, on October 7, 2016, filed a Complaint for Ejectment in the Rhea County Chancery Court (the "trial court") against both of them. Wendell and Jason Smith filed an Answer and Counter-Complaint, naming Brenda Harris as a third-party defendant and requested that a constructive trust be imposed against the two-acre parcel and the block house. The trial court entered its final order on April 29, 2019. As is relevant here, the trial court found and ordered as follows:

> (4) The sale of the real property including the house and 12 acres to Justin Harris was an arm's length transaction and it was for fair cash market value . . . . (7) The Plat separating the two acres of real property for Wendell Smith does not comply with the Statute of Frauds. (8) There are no other agreements or memorandums [sic] that satisfy the Statute of Frauds regarding transfer of two acres of real property from Emma Price to Wendell Smith. (9) There is to be imposed a constructive trust wherein Wendell Smith is granted two acres improved by a block building from the Petitioner, Justin Harris, subject to a first right of refusal.

Additionally, the trial court ordered that, "[w]ithin two weeks from entry of the Final Order in this cause, Respondent, Wendell Smith, shall finalize the Plat of the two acre tract such that it can be recorded and shall have prepared a Quitclaim Deed from Justin Harris to Wendell Smith with a right of first refusal." Justin Harris timely appealed.

#### ISSUE PRESENTED

As we perceive it, there is one dispositive issue on appeal, restated as follows: Whether the trial court erred in imposing a constructive trust against the two acres and the block house for the benefit of Wendell Smith.

#### DISCUSSION

Here, the trial court imposed a constructive trust "against the two acres and the block structure for the benefit of Wendell Smith against the current owner, Justin Harris." A constructive trust is one created in equity to satisfy the demands of justice. *Rowlett v.*

- 3 -

*Guthrie*, 867 S.W.2d 732, 734 (Tenn. Ct. App. 1993). It is imposed against one who

> by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience, hold and enjoy.

*Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980). As this Court has stated, a court may impose a constructive trust in the following situations:

> (1) Where a person procures the legal title in violation of some duty, express or implied to the true owner; (2) where title to the property is obtained by fraud, duress, or other inequitable means; (3) where a person uses some relationship or influence to obtain legal title upon more advantageous terms than could be otherwise obtained; or (4) where a person acquires property knowing that another is entitled to its benefits.

*Arnold v. Bowman*, No. E2004-01151-COA-R3-CV, 2005 WL 1488679, at *6 (Tenn. Ct. App. June 23, 2005) (citing *Tanner v. Tanner*, 698 S.W.2d 342, 345-46 (Tenn. 1985)). As we perceive them, the relevant findings of fact pertaining to the trial court's imposition of the constructive trust are as follows:

> But that still leaves us with the issue of a constructive trust. The fact of the matter is that when the property was listed originally with the realtor, that it was listed as the house and 10 acres. And that was changed at some point to list or to advertise the house and 12 acres when it was sold to Brenda's son. That would be Justin Harris. I think it was an arm's length transaction. I think it was a fair cash market value. I think that Brenda Harris knew when she sold it that she was cutting off Wendell's claim to the property, which she previously—she admitted this whole thing[.]
>
> . . . . Well, what does it constitute when Brenda Harris gets on the witness stand and she admits under oath that her brother, Wendell, was supposed to have that two acres and that house, and that the problem was that the first survey was incorrectly drawn to include a part of a neighbor's property so it had to be redone further delaying her and her effort to get some money[.]
>
> . . . .
>
> But I'm interested in avoiding a hardship . . . . I listened to other

- 4 -

testimony about how much work, how much hard work Wendell and his son and perhaps others have put into building that little makeshift house back there. And I know that's bound to have been a back-breaking job that just was drug out for five or six years. And when they say they had twenty something thousand dollars invested in it, I didn't doubt that.

While the trial court could have been more specific in its findings, we discern from the proof in the record on appeal that it imposed the constructive trust against the two acres and the block house on the ground that Justin Harris had obtained title to the property knowing that another—Wendell Smith—was entitled to its benefits.

On appeal, Justin Harris maintains that, "[w]here the argument is that a constructive trust exists where a person acquires property with notice that another is entitled to its benefit[,] there is a requirement that the party seek[ing] to impose a constructive trust must own the property in question or have a beneficial interest in it." Additionally, Justin Harris argues that Wendell Smith's own conduct should have precluded the imposition of a constructive trust. Conversely, Wendell and Jason Smith argue on appeal that it was appropriate for the trial court to impose a constructive trust against the two acres and the block house not only because Justin Harris obtained the title with notice that they were entitled to its benefits, but also because he obtained it through inequitable means by obtaining it for less than its value.

### A. **Did Wendell Smith have a beneficial interest in the two acres?**

Wendell Smith maintains on appeal that his mother always intended for him to have the two-acre parcel, but he admitted that there was no written instrument reflecting the same besides her Last Will and Testament. Specifically, he testified as follows:

Q: [Emma Price] never gave you a deed, did she?
A: No.
Q: Okay.
A: She did it in her heart and love and it's real.

Brenda Harris echoed the same in her own testimony:

Q: Did [Emma Price] tell all three of the children what she wanted?
A: She discussed it, yes.
Q: Did she tell you all that she wanted Wendell [to] have two acres?
A: She said, yeah, two acres, but she didn't specify. She just said two acres.
Q: And did you know what two acres that was?
A: Well, he chose a spot long before that. So I assumed that would probably be the spot he would want.

- 5 -

Q: Did you have any objection to him choosing that spot?
A: I did not have an objection, no.
. . . .
Q: Brenda, did your mother ever gift any property to Wendell to your knowledge?
A: She—he picked a spot on his own and she told him he could have two acres, but other than just being something that she said, she said she wanted him to have two acres.

Further, Justin Harris' brief on appeal states that "[t]here was merely a promise to transfer the property at death threw [sic] a bequest in [Emma Price's] will." Accordingly, while Emma Price's will is not in the record on appeal, both parties agree that it provided two acres would pass to Wendell Smith upon her death. However, in this case, the trial court found that Brenda Harris, as the attorney-in-fact for Emma Price, had "gifted" the two acres and the block house to Wendell Smith. Addressing the survey that Brenda Harris requested Wendell and Jason Smith procure and which she subsequently signed, the trial court found as follows: "[I]t doesn't state the consideration. It doesn't—it contains a description of the property all right. Here it's drawn out. But it doesn't say anything about the consideration. *It was a gift, but that came in [b]y parol evidence.*" (emphasis added).

As we perceive it, regardless of whether Brenda Harris' alleged "gift" to Wendell Smith can be classified as such, the trial court's imposition of a constructive trust nevertheless may be appropriate, because, as this Court has noted previously, there are "a number of exceptions to the strict application of the statute of frauds[,]" one of which "is a factual scenario supporting a conclusion that the equitable remedy of a constructive trust or a resulting trust is appropriate." *Arnold*, 2005 WL 1488679, at *5. Accordingly, a constructive trust may be proved by parol evidence. *See, e.g.*, *Story v. Lanier*, 166 S.W.3d 167, 185 (Tenn. Ct. App. 2004); *Browder v. Hite*, 602 S.W.2d 489, 493 (Tenn. Ct. App. 1980). However, "[i]n order to establish a resulting or constructive trust by parole [sic] evidence generally requires a greater degree of proof than a mere preponderance of the evidence." *Browder*, 602 S.W.2d at 493. More specifically, we have noted the following:

> The general rule is that oral proof of an express trust in realty or personalty which is not required to be in writing, or of facts giving rise to a resulting or constructive trust, must be received with caution. So reluctant are the courts to engraft a trust by parol on the legal title to real estate, or to enforce an alleged parol trust in personal property, that there is perhaps no better-established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence.
>
> . . . .

- 6 -

It has also been held, where an express trust in land can be proved by parol evidence, that testimony of one witness only, unsupported by any corroborating circumstances, is insufficient to prove such a trust.

*Gray v. Todd*, 819 S.W.2d 104, 108-09 (Tenn. Ct. App. 1991) (quoting 76 Am. Jur. 2d *Trusts* § 637, at 846-47, 849-50 (1975)). Further, resulting and constructive trusts cannot be declared on the unsupported testimony of a plaintiff, contradicted by the testimony of the defendant or others, where the circumstances supporting each side are about equally divided. *Id.* at 109. Accordingly, we must determine whether the parol evidence in this record is sufficient to establish that Wendell Smith had a beneficial interest in the two-acre parcel, thereby rendering appropriate the trial court's imposition of a constructive trust against the same.

Wendell and Jason Smith argue on appeal that Justin Harris purchased the entire twelve acres with notice that Brenda Harris was in the process of subdividing the two acres from the Property. As noted above, in July 2015, Brenda Harris informed Wendell Smith and the other siblings that the Property would have to be sold in order to provide for Emma Price's care. Initially, Brenda Harris was willing to keep the Property in the family and sell it to a family member. Although several family members expressed an interest in purchasing the property, for various reasons, they were unsuccessful in their attempts to do so. After Jason and Tara Smith filed a Petition for Conservatorship, however, Brenda Harris decided that she would not sell the Property to a family member. On February 3, 2016, she listed the Property with Jim Monday at ERA Blue Key Properties. The Property was initially listed for $219,000, and, at the direction of Brenda Harris, the initial listing provided that the Property would include only ten rather than twelve acres. Specifically, Brenda Harris testified as follows:

> Q: Did you tell Jim Monday they're getting two acres; we're going to list the property—
> A: I told him to try to sell the 10 acres only.
> Q: 10 acres?
> A: Uh-huh.

Jim Monday echoed the same in his testimony:

> Q: Okay. And you say that it sits on 10 acres, not 12?
> A: Right.
> Q: Right.
> A: Because two acres didn't go.
> . . . .
> Q: Okay. When you showed the home, did you show them [the block house]. The inside of that building at all?
> A: No. Because [the block house] didn't go with the listing.

Ultimately, according to Brenda Harris and Jim Monday, potential purchasers did not want the Property unless it came with the full twelve acres.

It was at this point that Justin Harris decided that he would purchase the Property so his grandmother would not have to move into a nursing home.[3] Justin Harris testified that he always intended to purchase all twelve acres of the Property:

> Q: When you first were going to purchase the property, or you first learned the property was going to be offered to you kids, it was offered for—you kids, you grandchildren—it was offered as 10 acres and grandmother's house, right?
> A: No . . . . [T]hey was [sic] selling it all for the 12 acres and the—
> Q: Could you be mistaken about that? You heard your mom testify earlier.
> A: From what I understood is that she was going to purchase it and she was going to deal with Wendell because nothing was said about that when that was—when that was going on.

Wendell and Jason Smith, however, argue that Brenda Harris was willing to sell only ten acres of the Property, thus excluding the two-acre parcel. Significantly, Brenda Harris' testimony substantiates their claim:

> Q: Why did you sign the survey to allow the property to be subdivided two acres . . ., if what you're saying is true?
> A: . . . . He [Wendell Smith] went and done the survey. So I was going to go ahead and give him the two acres so I could sell my mom's house and –
> Q: You were going to go ahead and give the two acres to Wendell?
> A: Yes. So I could sell her house and take care of her.
> . . . .
> Q: How are you making efforts to give [Wendell Smith] two acres?
> A: Pretty much I wanted to—I was trying to be fair with everybody. He wanted those two acres. I needed to sell her house. So I was trying to give him the two acres and get it separated so I could sell the house.

Brenda Harris, however, testified that Wendell and Jason Smith never completed the process of subdividing the Property, despite having ample opportunity to do so. Jason Smith, however, testified that he and his father never completed the subdivision because Brenda Harris would not sign two remaining surveys that the planning commission required. Specifically, Jason Smith testified as follows: that, in April 2016, he went before the Rhea County Planning Commission in order to finish the process of subdividing the two-acre parcel from the Property; that he took with him various permits,

---

[3] Justin Harris had previously considered purchasing the Property in December 2015, but, for various reasons, he decided against it at that time.

soil samples, and the survey signed by Brenda Harris; but because he did not have two additional required surveys, the Commission did not complete the subdivision of the Property; and that, subsequent to the meeting before the Commission, Wendell Smith went to Brenda Harris' home and requested that she sign the remaining two surveys, but she refused.[4]

In *Gray v. Todd*, the plaintiff sued her former husband, seeking a court-ordered sale of certain farm realty owned by them as tenants in common and certain farm equipment jointly owned by them at the time of their divorce. *Gray*, 819 S.W.2d at 105. The defendant argued that, as a result of discussions between the parties at the time the divorce was obtained, an oral trust in his favor had been formed in both the farm realty and farm equipment. *Id.* The chancery court agreed, holding that the defendant had established the existence of an oral trust by parol evidence. *Id.* On appeal, this Court reversed, noting that resulting and constructive trusts cannot be declared on the unsupported testimony of a plaintiff, contradicted by the testimony of the defendant or others, where the circumstances supporting each side are about equally divided. *Id.* at 109. Ultimately, we found that "the only evidence of the purported oral agreement to create a trust was the testimony of an interested party—the defendant." *Id.* Moreover, we found that the defendant's testimony was contradicted by that of the plaintiff. *Id.* Accordingly, we held that the defendant's evidence "failed by a long shot to rise to the standard of 'clear, cogent and convincing proof' required by law for the creation and imposition of an orally-expressed trust." *Id.*

We reached a similar conclusion in *Allen v. National Bank of Newport*. There, the plaintiff executed deeds of trust on his farm in order to secure his debts. *Allen v. Nat'l Bank of Newport*, 839 S.W.2d 763, 764 (Tenn. Ct. App. 1992). Ultimately, however, the plaintiff defaulted. *Id.* The defendants, who had been chicken and tobacco farmers on the property for a number of years at the time of the foreclosure, loaned the plaintiff money, which he used to hire an attorney in an effort to enjoin the foreclosure sale, but he was unsuccessful in doing so. *Id.* The plaintiff then filed suit in the chancery court to impose a constructive trust on the farm that had been sold. *Id.* According to the plaintiff, the defendants had agreed to purchase the property and reconvey it to the plaintiff at some unspecified time in the future. *Id.* The defendants denied any such oral agreement was made. *Id.* The chancery court denied the plaintiff's request, and he subsequently appealed. *Id.* at 764-65. On appeal, we affirmed the chancery court's ruling, stating that the plaintiff's action must fail because he did not establish proof of an oral trust by clear and convincing evidence. *Id.* at 765. Specifically, we noted that "the evidence establishes that the parties presented sharply different versions of the facts surrounding the foreclosure and purchase." *Id.* Our holding in *Allen* emphasizes the principles

---

[4] The only evidence in the record as to why Brenda Harris would not sign the two additional surveys is her testimony that she was frustrated with how long it had taken Wendell and Jason Smith to get the subdivision approved.

expressed in *Gray*: that, without corroborating evidence, the testimony of one witness only—especially if that witness is the interested party—is insufficient to satisfy the heightened standard of proof required to create a constructive trust based on parol evidence.

In *Gray* and *Allen*, there was no corroborating evidence supporting the parol evidence submitted by the interested parties. In this case, however, unlike *Gray* and *Allen*, there *is* sufficient corroborating evidence to justify the trial court's imposition of a constructive trust. Here, Brenda Harris admitted that she wanted to give Wendell Smith the two acres, and, significantly, she signed a survey indicating the same. Additionally, referring to her dealings with the realtor, Jim Monday, Brenda Harris admitted that, when she initially listed the property for sale, it was for "the 10 acres only." Jim Monday offered corroborating testimony, stating that the "two acres didn't go" and that the block house on the two acres "didn't go with the listing." Further, the initial listing itself indicated that the size of the Property was "10 acres". Of particular significance, even Justin Harris, who ultimately purchased the entire twelve acres of the Property, testified as follows:

> Q: And you knew that Brenda and Wendell were in discussion about giving
> Wendell that two acres?
> A: Yes.

Accordingly, there is more evidence in the record than simply the "testimony of one witness only, unsupported by any corroborating circumstances." *See Gray*, 819 S.W.2d at 109. Further, this is not a case "where the circumstances supporting each side are about equally divided[,]" s*ee id.*, or where "the evidence establishes that the parties presented sharply different versions of the facts[.]" *See Allen*, 839 S.W.2d at 765. Rather, the record contains clear and convincing evidence that Brenda Harris had agreed to transfer the two acres to Wendell Smith prior to the sale of the Property and that Justin Harris was aware of this situation. Accordingly, the facts of this case fall into "one [of the] situation[s] where it is appropriate for a court to impose a constructive trust[,]" that is, "where a person acquires property knowing that another is entitled to its benefits." *Arnold*, 2005 WL 1488679, at *6. We conclude that the trial court did not err in imposing a constructive trust against the two acres and the block house for the benefit of Wendell Smith. Having found that a constructive trust was appropriately found by the trial court, Appellees' argument that Appellant Justin Harris acquired the property by purchasing it for less than its value is pretermitted.

### B. **Does Wendell Smith's own conduct preclude the imposition of a constructive trust?**

Justin Harris also argues on appeal that Wendell Smith's own conduct should have precluded the trial court from imposing a constructive trust. He first points to the trial

court's pronouncement of the maxim that "equity aids the vigilant." Specifically, the trial court found as follows: "What bothers me is the long period of time from 2011 up until 2016 that he had to get everything done. There is a maxim of equity that says, equity aids the vigilant. There's another maxim that says, that those who sit on their rights lose their rights." Regardless of the fact that the trial court did not hold this maxim against Wendell and Jason Smith, we nevertheless find that it does not apply to the facts of this case. The record reflects that, while Wendell Smith began building the block house with his own funds on the two acres in 2011, Brenda Harris did not request that Wendell and Jason Smith procure the required survey to subdivide the two acres from the Property until sometime in 2015. Accordingly, Wendell and Jason Smith's procrastination and delay, if any, does not relate back to 2011, but rather to 2015. Further, when asked about the time in between Brenda Harris' signing the first survey on February 23, 2016 and his taking her the two additional surveys to sign, Wendell Smith testified as follows:

Q: From the time she signed the one paper till you asked her to sign two more, what length of time passed?
A: It wasn't long . . . . It was probably four weeks, five weeks.
Q: Okay. Did you and Brenda have any problems during that four or five weeks?
A: No. I thought everything was fine.

Accordingly, we do not find sufficient evidence of Wendell and Jason Smith's procrastination and delay so as to preclude the imposition of a constructive trust.

Justin Harris also cites to the doctrine of unclean hands, maintaining that Wendell Smith "has not come into court with clean hands thereby barring any recovery on his behalf." Specifically, he argues that Wendell Smith made threats "that someone would get hurt if he did not get his two acres" and that, in response, "Brenda Harris signed one of the surveys[.]" This, however, is not an accurate portrayal of the timeline of the events. As noted previously, when specifically asked why she signed the first survey with the intention of subdividing the two acres from the Property, Brenda Harris testified as follows: "He [Wendell Smith] went and done the survey. So I was going to go ahead and give him the two acres so I could sell my mom's house[.]" Accordingly, from our review of the record on appeal, we conclude that Brenda Harris did not sign the first survey because Wendell Smith threatened her. While this Court certainly does not condone threatening behavior of any kind between parties, we conclude that the doctrine of unclean hands is inapplicable to this case and that Wendell Smith's conduct does not preclude the trial court's imposition of a constructive trust.

**CONCLUSION**

For the reasons set forth above, the judgment of the trial court is hereby affirmed.

_____
ARNOLD B. GOLDIN, JUDGE